Eugene CHUDZIK and Barbara
Chudzik, Plaintiffs,

v.

CITY OF WILMINGTON,
et al., Defendants.

Civ. A. No. 91–610 LON.

United States District Court,
D. Delaware.

Dec. 30, 1992.

John J. Sullivan, Jr., Law Offices of Sylvia E. Hall, Wilmington, DE, for plaintiffs.

Eric L. Episcopo, City of Wilmington Law Dept., Wilmington, DE, for City of Wilmington defendants.

Jeffrey M. Weiner, Weiner & Weir, Wilmington, DE, for defendant Wilmington Fraternal Order of Police Lodge No. 1.

OPINION

LONGOBARDI, Chief Judge.

### A. NATURE AND STAGE OF THE PROCEEDINGS

On November 12, 1991, the Plaintiffs in this action, Eugene and Barbara Chudzik,

filed suit against numerous Defendants for the alleged deprivation of Plaintiffs' constitutional and common law rights. Docket Item ("D.I.") 1. Specifically, the Plaintiffs seek compensatory and punitive damages from Defendants City of Wilmington, Alex J. Smalls (former Director of the Department of Public Safety), Officer Wayne Brown, Police Chief Guy Sapp, the Fraternal Order of Police Lodge 1 (the police union), and unknown Defendants, P-1 through P-5 (police officers who participated in the events alleged in the complaint and whose names are presently unknown).[1]

Plaintiffs' suit stems from a confrontation with the Wilmington Police Department occurring on October 6, 1989, in which Plaintiff Eugene Chudzik was arrested and detained by police officers from the City of Wilmington Police Department for allegedly driving under the influence of alcohol. In the first instance, Plaintiff Eugene Chudzik claims that during the course of his arrest Defendant Brown employed excessive force causing him to suffer severe damages. Specifically, Mr. Chudzik claims that in the course of driving him to the police station, Officer Brown, despite numerous pleas from Mr. Chudzik, maliciously refused to loosen handcuffs that were allegedly unduly restricting the Plaintiff's blood circulation. D.I. 1 at 6, ¶ 13; D.I. 28 at 4. More significantly, Plaintiffs contend that Officer Brown became physically abusive when the Plaintiff Eugene Chudzik refused to become infuriated by the Officer's alleged attempts to intimidate him. D.I. 28 at 4. Mr. Chudzik alleges that after Officer Brown refused to identify himself, Plaintiff, upon being removed from the police vehicle, attempted to obtain the license plate number of the police car. *Id.* at 5. According to the Plaintiffs, it was at this point when without warning Officer Brown violently struck Mr. Chudzik on the back of the head with an unknown object which caused him to fall to the ground and injured his right ear, left shoulder and hand. *Id.*[2] Plaintiffs further allege that the administrative hearing held subsequent to that incident by the Police Department's Complaint Hearing Board was inherently unfair based on the Board's structure and its governing procedure.[3] Plaintiffs are basically claiming that during the hearing it became apparent to them that the principal objectives of the hearing were to simply appease the Plaintiffs and to unequivocally clear Officer Brown of any wrongdoing. *Id.* at 21. Plaintiffs conclude that this "sham" of a proceeding (theoretically geared towards assessing Officer Brown's conduct), together with Officer Brown's alleged excessive force, resulted in serious deprivations of Plaintiffs' rights.

In total, the Plaintiffs have apparently alleged civil rights violations under 42 U.S.C. §§ 1983, 1985 and 1988, constitutional violations under the 1st, 4th, 5th and 14th Amendments to the Constitution, violations of the Delaware Constitution and

---

1. The Court notes that the Defendants are divided into two groups based on their separate submissions to the Court seeking dismissal of the present action. Group I consists of Defendants City of Wilmington, former Director of Public Safety Small, Officer Brown and Officer Sapp. The parties from this group have been sued in both their individual and official capacities and the theories offered for dismissal reflect those differences. Additionally, this group indicates that "[t]he City has taken the position that ethical considerations prevent representation of the "Unknown Defendants" in this matter. However, the City reserves the right to represent said Defendants if their identities become known and they are properly served." D.I. 22 at 1 n. 1. Accordingly, the "unknowns" have no formal motion for dismissal presently before the Court. Group II is the Fraternal Order of Police Lodge 1 (hereinafter "the Union").

2. Plaintiff further alleges that as a result of this abuse by the Defendant his ear was bleeding, that his shoulder was bleeding, that he developed a swollen and weepy black eye and that the handcuffs cut into his wrist leaving an impression that has caused him persistent loss of feeling and numbness in his left hand. D.I. 28 at 5-6. Plaintiff contends that the latter of these injuries has resulted in Plaintiff still needing to visit a hand specialist and that the injuries have severely impacted Mr. Chudzik's ability to perform his job as a hairdresser. *Id.* at 6.

3. On November 9, 1989, Plaintiff Eugene Chudzik filed a complaint with the Division of Internal Affairs of the Wilmington Police Department concerning the conduct of Officer Brown. D.I. 22 at 7. It is the nature of this administrative proceeding, discussed more fully at notes 5 and 7, *infra,* that is at the heart of the Plaintiffs' Complaint.

state law tort claims. *See generally* D.I. 1.[4] For purposes of resolving the motions before it, the Court separates this complex Complaint into two groups: the federal claims and the state law claims. Moreover, Plaintiffs' federal allegations are further classified into two types: (1) those claims relating to the excessive use of force exercised by Defendant Officer Brown ("The Excessive Force Claims") and (2) those claims involving the subsequent internal affairs investigation into the charges of police misconduct ("The Complaint Hearing Board Claims").

▮ The federal claims are generally encompassed by Counts I, II, VI and XI of the Complaint. Fundamental to each of those Counts is the underlying allegation that Defendant Officer Brown violated the Plaintiffs' rights to equal protection of the laws under the 5th and 14th amendment to the United States Constitution and 42 U.S.C. § 1983 by his physical abuse of Mr. Chudzik. Counts I and XI of the Complaint claim that the policies and procedures of the City of Wilmington Police Department and its officials regarding hearings of excessive force in some way violated the due process and equal protec-

tion clauses of the Constitution.[5] Count II alleges a conspiracy by the Defendants regarding the hearing of Plaintiffs' claim of excessive force. Similar to the claims in Count I and XI, Plaintiffs claim that this conspiracy deprived them of their civil rights because the customs, policies and procedures of the Defendants, City of Wilmington, Chief Sapp and Director Smalls, caused Defendants Brown and the Fraternal Order to reasonably believe that officers in making arrests could employ excessive force with impunity.[6] Additionally, Counts II and VI both claim that the Defendants affirmatively engaged in a conspiracy to deprive the Plaintiffs of a fair and just administrative hearing on their right to be safe from excessive police force.[7] Counts III–V and VII–X of the Complaint all fall liberally under the umbrella of the state law of Delaware. The Court recognizes that the Defendants do not raise a jurisdictional challenge to this Court's ability to resolve these state law claims.[8] A scan of the record leads this Court to agree with the underlying assumption that all of the various state law claims here arise out of the same nucleus of operative facts as the federal claims. Those claims therefore are properly tried

---

**4.** It has been difficult to discern the exact nature of Plaintiffs' specific claims as a result of the scatter-shot approach to the pleadings utilized by the Plaintiffs.

**5.** This Count, falling under the heading of Complaint Board Hearing Claim, indicates that Plaintiffs' rights were violated (1) by denying the Plaintiffs the opportunity to bring counsel to this hearing; (2) by the adjudication of this Complaint by a biased review Board (consisting of three Wilmington Police Captains); (3) by failing to allow the Plaintiffs to cross-examine the witnesses; and (4) by failing to provide the Plaintiffs with the transcripts of these proceedings. D.I. 1 at 13.

**6.** Plaintiffs have essentially claimed that the City of Wilmington, Director of Public Safety Smalls, Police Chief Sapp and the Union violated Plaintiffs' rights under the 5th amendment of the United States Constitution and 42 U.S.C. § 1983 by promoting a policy of excessive force, encouraging the conduct of Officer Brown and by failing to adequately train and supervise the activities of Officer Brown.

**7.** Plaintiffs' Complaint, although convoluted in nature, essentially claims that Defendants City of Wilmington, Public Safety Director Smalls,

Police Chief Sapp, Officer Brown, the Union and Unknown Police Officers all wrongfully conspired to cover up Officer Brown's conduct and record of excessive force thereby denying them their procedural due process rights under the 14th amendment and 42 U.S.C. § 1985 by (1) denying the Plaintiffs the opportunity to bring counsel to this hearing, (2) ordering Plaintiffs to leave the room after Mr. Chudzik's testimony as a witness before the allegedly "partial" review Board (consisting of three Wilmington Police Captains), (3) lulling Plaintiffs into believing that their complaint of excessive force would receive a fair hearing, (4) by failing to allow the Plaintiffs to cross-examine the witnesses, and (5) by failing to provide the Plaintiffs with a record of these proceedings.

**8.** The Defendants have raised the challenge, however, that if the Court dismisses the federal law claims against the Defendants, the Court should exercise the discretion suggested in *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), and dismiss the pendent state law claims. D.I. 22 at 34–35. This argument is squarely addressed at Section 5, *infra.*

before this Court in accordance with the federal provision for supplemental jurisdiction authorizing federal courts to preside over state law claims otherwise lacking an independent jurisdictional basis. 28 U.S.C. § 1367.[9]

Presently before this Court are motions from the Defendants City of Wilmington, Smalls, Sapp and Brown, and the Union.[10] The City of Wilmington, Smalls, Sapp and Brown have all filed a collective Motion for Summary Judgment as to each of the named Defendants under numerous factual and legal theories. D.I. 22. The Union Defendant has filed a Brief in Support of its Motion to Dismiss on the primary ground that the Plaintiffs have failed to state a valid claim against it under 42 U.S.C. § 1983.[11]

### B. SUMMARY JUDGMENT STANDARDS

■ Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact that can be resolved at trial and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Materiality is determined by the substantive law that governs the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute is "genuine" only if a reasonable jury could return a verdict for the nonmoving party. *Id.* Following a determination that no genuine dispute of material facts exists, the moving party must demonstrate that it is entitled to judgment as a matter of law.

■ Once the moving party has made and supported its motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ Additionally, any doubts as to the existence of genuine issues of fact will be resolved against the moving party and all inferences to be drawn from the material it submits will be viewed in the light most favorable to the party opposing the motion. *Norfolk v. Southern Corp. v. Oberly,* 632 F.Supp. 1225, 1231 (D.Del.1986) (citing *Adickes v. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)), *aff'd,* 822 F.2d 388 (3rd Cir.1987). If the evidentiary record supports a reasonable inference that the ultimate facts may be drawn in favor of the responding party, then the moving party cannot obtain summary judgment. *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 258 (3rd Cir.1983), *rev'd on other grounds,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

---

9. Count III is raised under the auspices of the Wilmington Police Department Law Enforcement Officers' Bill of Rights and is based on an alleged failure by the Defendants to conduct their investigation and hearing in accordance with the guidelines set forth in those Bill of Rights. Count IV alleges that the Defendants have violated the Delaware Constitution's provision providing individuals with procedural due process. Count V is the only count that includes alleged damage to Plaintiff Barbara Chudzik and is a state tort law claim for loss of consortium. Count VII is a state law tort claim for defamation. Counts VIII and IX raise state law tort claims for intentional infliction of emo-

tional distress and negligent infliction of emotional distress, respectively. Lastly, Count X simply restates the Complaint's prior charges that the administrative hearing in some way deprived the Plaintiffs of their rights.

10. See *supra,* note 1.

11. Additionally, for purposes of its Motion to Dismiss, the Union expressly adopts Arguments II, III, V, VI, VII, VIII, IX and XII made by the City Defendants in their Motion for Summary Judgment. D.I. 25 at 1.

## C. DISCUSSION

### 1. *Dismissal of Plaintiffs' Section 1983 Claim of Excessive Force Against Supervisory Defendants Smalls and Sapp in Their Individual Capacities*

"[I]n any § 1983 action the initial inquiry must focus on ... whether the conduct complained of was committed by a person acting under the color of state law; and ... whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parrat v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). There is no dispute that Public Safety Director Small and Police Chief Sapp are persons acting under color of state law and none of the Defendants contend that Plaintiffs are without a liberty interest in freedom from unjustified bodily harm. *Accord, Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) ("[a]mong the historic liberties ... protected [by the Due Process Clause] was a right to be free from, and to obtain judicial relief for unjustified intrusions on personal security").[12] Accordingly, for purposes of a summary judgment motion as to these Defendants, this Court focuses on whether Plaintiffs have shown that there exists a triable issue as to "whether the *defendant[s'] behavior deprived* the Plaintiff of his liberty interest." *Heine v. Receiving Area Personnel,* 711 F.Supp. 178, 181 (D.Del.1989) (emphasis added).

Here, the Court is not satisfied by the factual scenario alleged by the Plaintiffs that the conduct of these Defendants could have violated the Plaintiffs' rights. Plaintiffs' Complaint does not identify either Defendant Smalls or Defendant Sapp as being present during the alleged attack on Mr. Chudzik by Officer Brown nor does it allege any affirmative knowledge or active involvement by these Defendants. Rather, Plaintiffs' claims against these Defendants are essentially based on the legal theory of supervisory responsibility. Plaintiffs' only relevant "factual" allegations against these supervisory Defendants are: (1) that the supervisory Defendants failed to adequately ensure that hearings on excessive force were fair; (2) that the supervisory Defendants failed to train the officers conducting such hearing in a fair manner to ensure proper investigative techniques and procedures; and (3) that by its failures, the supervisory officials caused Officer Brown and its Union to wrongfully believe that the use of excessive force was within the discretion of officers and that complaints of excessive force would not be honestly investigated, with the foreseeable result being that officers would be more likely to use improper force. D.I. 1 at 15–16, ¶¶ 63(e) & (f), 64.

These conclusory allegations do not in any meaningful way allege *specific* conduct on the part of the supervisory Defendants that satisfy the heightened specificity standard. *Accord, Bush v. City of Wilmington,* C.A. No. 89–628–JRR, slip op., Roth, J. (D.Del. Aug. 23, 1990) (plaintiffs' claims against the supervisory defendants dismissed for failure to meet the heightened specificity requirement for civil rights complaints).[13] While the involvement of Defen-

**12.** In fact, it is Defendants' position that the excessive force claim is the *only* portion of the Plaintiffs' Complaint that potentially implicates a constitutionally cognizable claim. D.I. 22 at 18 ("With the sole exception of Plaintiff's claim of alleged excessive force ..., none of the counts in Plaintiffs' complaint could conceivably state a valid claim under 42 *U.S.C.* § 1983"); *Id.* at 18–20 (Plaintiffs' Complaint Hearing Board Claims all fail to state a claim under 42 U.S.C. § 1983 as they do not deprive the Plaintiffs of a right or privilege secured by the Constitution or the laws of the United

States). The Court addresses this argument squarely at note 22, *infra.*

**13.** In that case, plaintiffs alleged that white police officers entered into the plaintiff's home without cause or provocation and beat the plaintiff, a black male, for discriminatory motives. *Bush v. City of Wilmington,* C.A. No. 89–268–JRR. Like the case presently before this Court, the plaintiffs there alleged without any tangible factual support, much more significant and detailed links between the supervisory defendants and the officers who engaged in the alleged wrongful conduct. In particular, *inter alia,*

dants Smalls and Sapp may be shown through allegations that they personally directed the unlawful conduct or had actual knowledge of and consented to that conduct, such allegations must be made with the necessary particularity. *Rode v. Delarciprete,* 845 F.2d 1195, 1207 (3rd Cir. 1988). Nowhere in the Complaint (D.I. 1), the record or the Plaintiffs' Answering Brief (D.I. 28) do the Plaintiffs provide a factual basis that these Defendants were involved or acquiesced in Officer Brown's alleged misconduct. For example, nowhere is it stated on even a cursory level how, when or why Director Smalls and/or Police Chief Sapp failed to adequately train the hearing officers or on what basis these officers believed that they had the approval from their superiors to use excessive force on suspects. *See Bush,* C.A. No. 89–628–JRR at 7. In fact, at no point is the basis for *any* of the Plaintiffs' allegations against these Defendants set forth. Defendants mere supervisory position over Officer Brown is irrelevant for purposes of their individual liability. *Rode,* 845 F.2d at 1208.

■ Additionally, Plaintiffs' bare-bones pleading cannot be said to have satisfied the Third Circuit's specific standards for the imposition of supervisory liability. *Sample v. Diecks,* 885 F.2d 1099 (3rd Cir. 1989). Extending the Supreme Court's holding in *City of Canton v. Harris,* 489

plaintiffs alleged: (1) the supervisory defendants failed to supervise the police officers; (2) the supervisory defendants knew that the defendant police officers and other police officers had beaten and maliciously prosecuted citizens on previous occasions without probable cause; (3) the beating of the plaintiff was done at the direction of the supervisory defendants; (4) the supervisory defendants encouraged such acts in order to make an example out of the plaintiff and to generate publicity; (5) such actions were the *de facto* policy, procedure and custom of the Wilmington Police Department; and (6) it was the policy of the City of Wilmington not to investigate complaints by minorities of the use of excessive force by police (citations omitted).

Despite these far-reaching allegations and the Court's awareness of the difficulty plaintiffs face in attempting to redress civil rights claims, that Court granted defendants' motion for judgment on the pleadings, finding that "[i]t is not asking too much for plaintiffs to come forward with more than the conclusory allegations confront-

U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) beyond municipal entities to supervisory personnel, the Third Circuit in *Sample* concluded that "a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' ... has exhibited deliberate indifference to the plight of the person deprived." *Id.* at 1118. To hold a supervisory official liable, the plaintiff must: (1) identify with particularity what the supervisory official failed to do that demonstrates his deliberate indifference; and (2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury. *Sample v. Diecks,* 885 F.2d at 1118; *City of Canton v. Harris,* 489 U.S. at 387, 109 S.Ct. at 1204.

■ Here, construing Plaintiffs' claim in its most favorable light, Plaintiffs have still not in any manner identified with particularity what the Defendants did that indicates deliberate indifference. Consequently, consistent with the settled doctrine that traditional concepts of *respondeat superior* do not apply to civil rights actions arising under section 1983, Plaintiffs' claims against Defendants Smalls and Sapp must be dismissed on the pleadings. *Accord, Rizzo v. Goode,* 423 U.S. 362, 375–76, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976); *Gay v. Petsock,* 917 F.2d 768, 771 (3rd Cir.1990); *Heine,* 711 F.Supp. at 186–188.[14]

ing the Court." *Id.* at 8. As to these Defendants, this Court's opinion is in accordance with the holding in *Bush* in that it requires more than sweeping allegations ungrounded in fact. Contrary to Plaintiffs' claim, the Plaintiffs have not put forth their claim with a sufficient modicum of factual specificity to survive these Defendants' motion for summary judgment. *See* D.I. 28 at 39.

14. The Court also grants summary judgment as to Defendants Smalls and Sapp for the Complaint Board Hearing Claims raised under 42 U.S.C. § 1983. In short, Plaintiffs' claims that the administration and structure of this Board in some fashion deprived the Plaintiffs of their liberty interest in procedural due process are dismissed as to these Defendants for the reasons already posited in connection with the excessive force claim. The Court also notes that even if it were to assume *arguendo* that the Plaintiffs have met the pleading requirements under the Third Circuit's heightened specificity standards for the Complaint Board Hearing Claims, sum-

2. *Dismissal of All of Plaintiffs' Section 1983 Claims Against Defendant City of Wilmington and Defendants Smalls, Sapp and Brown in Their Official Capacities for Failure to Show the Required Official Custom or Policy*

 The City of Wilmington, a municipality, may not be held liable for the unlawful acts of its officers under a theory of *respondeat superior.* *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, under *Monell,* municipalities may be sued directly under section 1983 for constitutional violations perpetrated under the auspices of a governmental custom, policy, ordinance or regulation.[15]

 Here, Plaintiffs consistently make sweeping references to what they perceive as the City of Wilmington's unconstitutional "custom" and "policy" that resulted in the infliction of the constitutional violations against Mr. Chudzik. D.I. 28 at 32–37. In particular, they attempt to identify that "policy" as the supposedly unfair procedural structure which governs hearings aimed at determining whether an officer is to be subject to discipline.[16] Plaintiffs take issue with the fact that they as complainants or alleged victims of police conduct were not afforded the same procedural protections during Officer Brown's hearing as was Officer Brown. *Id.* at 32–33 (Plaintiffs were denied the chance to be represented by counsel during the proceedings, whereas Officer Brown was represented by counsel; the hearing was allegedly held before "partial" members by virtue of the fact that the Board members were Police Captains; Plaintiffs were denied the chance to confront witnesses and Plaintiffs were not permitted to receive a transcript of the proceedings).

Based on this system for hearing complaints against police officers, Plaintiffs conclude that "... it should be obvious to Defendants that these two events, the assault and the resulting hearing, formed the basis of a policy which permits the police to assault detainees virtually without punishment by the department given the structure of its own internal disciplinary hearings." *Id.* at 32.[17] Plaintiffs further contend that "... through the procedural

---

mary judgment would still be appropriate for the independent reasons discussed *infra* at note 22. Lastly, to the extent that the Plaintiffs may have intended that the Defendant Union be held liable for Officer Brown's alleged excessive force under a theory of supervisory responsibility or *respondeat superior,* this Court grants summary judgment as to the Union.

15. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Bush,* C.A. No. 89–628–JRR at 9 (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037).

16. Allegations of police misconduct, including allegations of excessive force, are governed by the Law Enforcement Officers' Bill of Rights. 11 Del.C. § 9200. A Hearing Board is provided for at section 9203. This hearing is described by Director of Public Safety Smalls as being analogous to a criminal proceeding whereby the Internal Affairs Division is the prosecutor and the accused Officer is the Defendant entitled to numerous procedural protections, including the right to be represented by counsel, the right to cross-examine witnesses, the right to have the charges heard by an impartial review board and

the right to a copy of the transcript of the proceedings. The alleged victim of the police misconduct acts as a *witness* in these proceedings. *See* D.I. 29 at 47–50. Thus, contrary to Plaintiffs' claims, the November 9, 1989 hearing was not designed to be a forum for Mr. Chudzik "to have an opportunity to have a fair hearing reviewing his Complaint against Mr. Brown." D.I. 1 at 13, ¶ 57.

17. From this statement, it is not at all obvious that a "policy" exists. Ultimately, the Court understands Plaintiffs' somewhat convoluted argument on the "policy" issue to be that the very structure of the Complaint Hearing Board in which other Officers hear the allegations, evidences a "policy" of clearing police officers of allegations of police misconduct. More significantly, Plaintiffs are positing that as a result of this policy, unconstitutional conduct by police officers is promoted and the Officers engage in misconduct *without fear of punishment because* Officers "know" that they will ultimately be cleared by the Board. As discussed more fully in the body of this opinion, the Court finds that the Plaintiffs have not raised a genuine issue of material fact as to the existence of this "policy" and, therefore, summary judgment is proper for the City of Wilmington and the officers named in their official capacities.

structure of its disciplinary hearings, a policy exists which circumvents the constitutional rights of a police detainee who has been assaulted while in custody and seeks relief from the police department." *Id.* at 33.

Contrary to the Plaintiffs' claims, there is nothing obvious about the existence of this alleged policy. In fact, upon close scrutiny, the only thing that becomes obvious is that the Plaintiffs have once again offered absolutely no *factual support* for their conclusory allegations regarding an unconstitutional policy. Plaintiffs have pointed to no statute or rule that embodies the alleged policy.[18] In the absence of any unconstitutional statute or rule, Plaintiffs must articulate a factual basis that demonstrates considerably more proof than a single incident. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985).

As stated, Plaintiffs have no factual basis for their conclusion that the Complaint Board in its structure is designed to promote a policy of police misconduct.[19] Rather, Plaintiffs have essentially alleged a single incident of misconduct by Officer Brown combined with general allegations that these activities are reflective of some nebulous official policy. Single incidents of misconduct, when joined with broad allegations of a policy or custom, do not give rise to liability for municipalities. *Id.; Bush,* C.A. No. 89–268–JRR at 10–11.[20]

Accordingly, the Court finds even when construing Plaintiffs' Complaint in its most favorable light, that the Plaintiffs have failed to raise a genuine issue of fact concerning the existence of an unconstitutional policy that requires the Court to let the case be heard by a jury. Consequently, summary judgment is appropriately granted as to Defendant City of Wilmington.[21]

3. *Dismissal of Plaintiffs' Section 1985 Complaint Hearing Board Conspiracy Claim Against All Defendants* [22]

■ At Argument IV of their Answering Brief, Plaintiffs claim that in the case

---

**18.** To the extent that the Plaintiffs are pointing to 11 Del.C. § 9200 *et seq.* which governs the rights of police officers who are faced with suspension or disciplinary action for alleged wrongdoing as unconstitutional, the Court rejects that argument on its face. That statute is specifically geared towards protecting the rights of law enforcement officials. *Id.* at § 9200(b).

 *See also,* note 22, *infra,* where the Court concludes that in raising their Complaint Hearing Board claims, Plaintiffs failed to state a claim under 42 U.S.C. § 1983.

**19.** Plaintiffs state that "[i]n the present case, this unconstitutional policy has been pled with sufficient specificity, *citing the City of Wilmington Police Department's conduct of police* beatings through its own use of an unconstitutional disciplinary hearing process ratified by its own Police Officer's Manual." D.I. 28 at 34 (emphasis added). See *United States v. City of Philadelphia,* 644 F.2d 187, 205 (3rd Cir.1980) (plaintiff's claim against the City of Philadelphia dismissed for failure to plead with a modicum of factual specificity its claim against the municipal defendant).

**20.** The only thing the total record seems to indicate (including the correspondence between the Plaintiffs and Defendant Smalls, D.I. 29 at 47–50) is that Plaintiffs' charges were heard, were thoroughly considered and further, that the City through its officials seemingly extended the Plaintiffs every courtesy in responding to

their disappointment with the whole grievance procedure. *Id.*

**21.** The Court also grants summary judgment as to Defendants Smalls, Sapp and Brown in their official capacities. Because the Officers when acting in their official capacity are essentially implementing the policies and customs of the municipality, Plaintiffs' failure to plead a valid cause of action against the municipality demands dismissal of the section 1983 claims against the officers in their official capacities. *See, e.g., Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2036 n. 55; *Bush, supra.* Additionally, in light of the Court's decision to grant summary judgment, the Court offers no opinion on Defendants' argument that punitive damages are an inappropriate form of damages against the municipality and those Defendants sued in their official capacity. D.I. 22 at 25 (Argument VI).

**22.** The Court notes initially that although it is somewhat unclear from the pleadings, the Plaintiffs apparently are not bringing those Complaint Hearing Board claims relative to a deprivation of the Plaintiffs' procedural due process rights under 42 U.S.C. § 1983. D.I. 28 at 28 (Plaintiffs claim that the Defendants artificially limited the focus of their cause of action to section 1983 when section 1985 is also applicable). However, to the extent that the Plaintiffs intended that their claims challenging the administration and structure of the Complaint

at bar, section 1985 is applicable to Defendants' conduct arguing "that the Defendants conspired in violation of Section 1985 to cover-up Officer Brown's conduct and record of excessive force, thereby denying him his 14th amendment *procedural due process rights.*" D.I. 28 at 28 (emphasis added). Plaintiffs apparently rely on portions of section 1985(2) and (3) in support of their claim. *Id.* The pertinent part of section 1985(2) upon which Plaintiffs rely provides for a civil rights cause of action "... if two or more persons conspire for the purpose of impeding, hindering, obstructing or defeating, in any manner the due course of justice in any State or Territory, *with intent to deny to any citizen the equal protection of the laws....*" (Emphasis added). The relevant portion of section 1985(3) is:

> ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one of the conspirators.

42 U.S.C. § 1985(3).

 To support this alleged conspiracy, the Plaintiffs point to various allegations made in the complaint. Particularly, Plaintiffs allege: (1) that there was a "sarcastic" statement from an unnamed officer at the time of Mr. Chudzik's arrest that "Officer Brown never loses a case" (D.I. 1 at 7, ¶ 19); (2) that at the hearing, to his surprise, Mr. Chudzik was directed to leave the room after his testimony and was not allowed to listen to the testimony of the other witnesses (*Id.* at 12, ¶ 48); (3) that as Mr. Chudzik was leaving the room he observed two officers being called to testify that he did not recognize as being present on the night of the arrest, thereby raising an inference that the hearing was merely being held to facilitate a cover-up (*Id.* at 12, ¶ 49); and (4) that Plaintiffs were not permitted the opportunity to review the transcripts of the hearing (*Id.* at 12–13, ¶ 52). D.I. 28 at 24–26.[23] Plaintiffs argue that these factors indicate a "cloak of secrecy" that when taken together "give rise to substantial grounds to suspect a conspiracy to deny Eugene Chudzik's rights of access to the courts under the due process clause of

Hearing Board also be brought under 42 U.S.C. § 1983, they are dismissed as to all appropriate Defendants for failing to state a claim.

Put simply, Defendants are correct in their assertion that the Plaintiffs have absolutely no constitutionally protected interest in the administration of, or participation in the Complaint Hearing Board process. D.I. 22 at 19. A liberty interest may arise from two sources: The due process clause itself or from state statutes or regulations which contain (1) "the repeated use of explicitly mandatory language", *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983), and which (2) place "substantive limitations on official discretion", *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). Plaintiffs cannot point to anything in the due process clause or the Delaware statute itself that even remotely suggests that the *statute itself* creates a constitutional right to this hearing for the complainants. Rather, the statute unequivocally provides that the process exists to guarantee *law enforcement officials* the right to due process when facing disciplinary action. *See*

*supra,* note 16. In short, Plaintiffs' claims concerning the Complaint Hearing Board process do not claim a violation of rights, privileges or immunities secured by the Constitution and federal laws as is required in order to sustain a cause of action under section 1983. *See Freedman v. City of Allentown,* 853 F.2d 1111, 1114 (1988) (quoting *Riley v. Jeffes,* 777 F.2d 143, 145 (3rd Cir.1985).

23. Plaintiffs point to 11 Del.C. § 9200 as support for the notion that the records of disciplinary hearings are not intended to be confidential. However, internal employee disciplinary hearings are excepted from public disclosure under Delaware's Freedom of Information Act and it therefore could have been an invasion of Officer Brown's privacy if the record of that proceeding had been disseminated to the Plaintiffs. *See* 29 Del.C. § 1002(d)(1). *See also* D.I. 29 at 49 (letter from Defendant *Smalls* to the Plaintiffs explaining why the transcripts could not be released to the Plaintiffs). Accordingly, the Court finds this factor irrelevant for purposes of determining whether there was some form of conspiracy against the Plaintiffs.

the 14th amendment by 'impeding, hindering, obstruct[ing] or defeating the due course of justice.' " *Id.* at 29.

■ While the Court concludes that these factual averments do not in a meaningful way sufficiently allege a conspiracy which has deprived Plaintiffs of their civil rights, the Court need not rest its decision on this conclusion in order to support its ultimate conclusion to grant summary judgment as to these claims.[24] Rather, the Court emphasizes the more fundamental position that contrary to Plaintiffs' claim, neither provision of section 1985 upon which Plaintiffs rely is applicable to the case at bar.[25]

■ In order for a plaintiff to sustain a cause of action under section 1985(3), there must be a showing of "... some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Similarly, under section 1985(2) which has as its object the denial of equal protection of the laws, Plaintiffs had to have alleged a class-based invidiously discriminatory animus. *Brawer v. Horowitz*, 535 F.2d 830, 840 (3rd Cir.1976).[26] Plain-

---

**24.** Plaintiffs have the burden to demonstrate the involvement of the Defendants in a conspiracy or understanding to deprive the Plaintiffs of a privilege, right or immunity secured by the Constitution or federal law as is required by 42 U.S.C. § 1983. *Accord, Chicarelli v. Plymouth Garden Apartments*, 551 F.Supp. 532, 539 (E.D.Pa.1982). As noted, *supra* note 22, it is not totally clear from the confusing nature of Plaintiffs' pleadings whether they are bringing this conspiracy claim pursuant to section 1983 in addition to section 1985. To the extent that was their intent, the Court concludes for two independent reasons that Plaintiffs have not raised a genuine issue of material fact on the conspiracy issue that would otherwise necessitate this Court's denial of Defendants' Motion for Summary Judgment and Motion to Dismiss.

First, Plaintiffs cannot rightfully claim that Defendants conspired to deprive Plaintiffs of any federally created interest because, as noted *supra*, note 22, Plaintiffs have not shown and cannot show a procedural due process interest (or any other federally created interest for that matter) in the administration of, or participation in, the Complaint Hearing Board process.

Additionally, Plaintiffs "factual allegations" of conspiracy are not sufficient to withstand a dismissal. To sustain a conspiracy claim under the Civil Rights Act, a plaintiff must show through specific facts: (1) that the defendants agreed to violate his federally created rights; and (2) the existence of an overt act resulting in damage. *Chicarelli*, 551 F.Supp. at 539; *Melo v. Hafer*, 912 F.2d 628, 638 n. 11 (3rd Cir.1990), *cert. granted*, — U.S. —, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991), *citing Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). The question of whether an agreement exists "should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can 'infer from the circumstances [that the alleged conspirators] had a' meeting of the minds 'and thus reached an understanding' to achieve the conspiracy's objective." *Hampton*, 600 F.2d at

621, *quoting Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

In this case, Plaintiffs have offered no specific facts to support the otherwise bald assertions that these Defendants conspired together to deprive Plaintiffs of their right to a fair and just hearing. The mere facts that some unknown officers were called to testify at the hearing, that another officer made a remark regarding Officer Brown never losing, the fact that the Hearing Board allegedly did not permit the Plaintiffs to hear the testimony of other witnesses, and Plaintiffs' overall dissatisfaction with the procedure, in no way even remotely specifies *how these Defendants agreed* to deny the Plaintiffs their rights. Plaintiffs do not offer any overt conspiratorial act by these Defendants nor do they attempt to distinguish the conduct of specific Defendants, instead, choosing simply to lump them all together under this theory of conspiracy. Moreover, Plaintiffs, represented by counsel, could have supplemented the record by making a formal motion requesting discovery under Federal Rule of Civil Procedure 56 but failed to take advantage of this opportunity.

Accordingly, the Court finds that there is nothing that would permit a jury to infer that the Defendants had a meeting of the minds to deprive the Plaintiffs of their rights. As such, the conspiracy question is appropriately taken from the jury and summary judgment is appropriate as to all the Defendants.

**25.** The Court recognizes that the Defendants have *not* raised this issue in any of their motions, choosing instead to rely on the sufficiency of the conspiracy allegations discussed *supra*, note 24. *See* D.I. 22 at 17 n. 9. However, by attempting to proceed directly under section 1985, Plaintiffs have put the applicability of this section at issue and therefore the Court properly examines its applicability.

**26.** Plaintiffs appear to have attempted to come within the purview of the second part of section 1985(2), for they essentially alleged that Defendants acted to obstruct justice with the intent to

tiffs here have not alleged, nor are there any facts in the record which would even approach this required showing of invidious discrimination. Accordingly, summary judgment is appropriate as to Plaintiffs' claims raised under both sections of section 1985.

### 4. Plaintiffs' Section 1983 Claim of Excessive Force Against Officer Brown in His Individual Capacity Is Dismissed Under the Applicable Statute of Limitations Period

At this point, the only remaining federal claim is the claim of excessive force against Defendant Brown in his individual capacity. While the Court has serious reservations as to whether the Plaintiffs have adequately stated a claim of excessive force necessary to survive a motion for summary judgment,[27] for purposes of this analysis the Court assumes *arguendo* that Plaintiffs have indeed made such a showing.

Both parties concur that for suits brought under section 1983, the applicable statute of limitations is two years from the

date of accrual. *See* D.I. 22 at 15–16; D.I. 28 at 19; D.I. 34 at 11. On that basis, the only imaginable date on which a constitutional claim may have begun to accrue for Plaintiffs was on October 6, 1989, when Officer Brown allegedly beat Mr. Chudzik incident to his arrest. *See* D.I. 22 at 16. Because Plaintiffs filed this action over two years later, on November 12, 1991, Plaintiffs' action is time-barred as a matter of law, absent a justification for a waiver or tolling of the statute of limitations.[28]

The Court finds neither justification present in the case at bar based on the record it has before it. Plaintiffs argue in the first instance that Defendants are equitably estopped from pleading the statute of limitations as a defense. D.I. 28 at 19–22. Here, Plaintiffs contend that:

> [W]hile it is true that the initial cause of action arose on October 6, 1989, *the conduct of the Defendants lulled the Plaintiffs into inaction,* thereby tolling the statute at least until January 31, 1990, the date of the initial hearing but probably until March 5, 1990, the date the result of the hearing became known.

deprive the Plaintiffs of their due process rights in access to the courts. D.I. 28 at 28–30. *See Rode,* 845 F.2d at 1206 and n. 7, regarding the "intimidation" provision of the first part of section 1985(2). The Court notes that Plaintiffs' "access to courts" argument brought under the second portion of section 1985(2) does not in any way rehabilitate Plaintiffs' 1985 claim as said argument is without any foundation in fact. Moreover, the case upon which Plaintiffs rely in support of this claim actually supports dismissal of the claim because, unlike that case, Plaintiffs have not put forth any allegations or facts supporting invidious discrimination. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1259 (7th Cir.1984) (citing *Griffin,* the court held that "[u]nder the second portion of Section 1985(2), a showing of discrimination is required in the sense that the provision prohibits conspiracies hindering the due course of justice where the conspirators acted 'with intent to deny any citizen equal protection of the laws.' ").

27. The Court's reservations are fueled by the somewhat astonishing admissions made in the Plaintiffs' own Answering Brief. After seemingly premising all of its Complaint Hearing Board claims on the initial excessive force allegedly employed by Officer Brown, the Plaintiffs themselves have apparently conceded without refer-

ence to any case law on what constitutes a constitutional violation of excessive force, that the alleged force utilized by Officer Brown in this case did not rise to the level of a constitutional violation. D.I. 28 at 42–43. Specifically, Plaintiffs stated:

> Each count of Plaintiff's complaint concerning constitutional violations refers directly to the hearing process which was prompted by the assault, not to the severity of the assault itself. The severity of the assault may be relevant to the issue of the level of harm caused by Defendant's violation of Mr. Chudzik's procedural due process rights, and to the issue of whether harm actually occurred. *However, the constitutionality of the assault itself is not directly an issue, but remains the initial means by which Defendants' policy of conducting and participating in unconstitutionally structured hearings was carried out and used to deny Mr. Chudzik's constitutional rights.*

*Id.* (emphasis added).

28. To the extent that Plaintiffs sought to implicate the other Defendants in this action for the alleged excessive force, the Court notes for the record that its conclusions regarding the statute of limitations acts as an independent ground for summary judgment as to all the Defendants.

D.I. 28 at 19 (emphasis added).[29] Plaintiffs' argument is easily rejected.

Plaintiffs point to the communications between themselves and Captain Alfree of the Internal Affairs Division regarding the Complaint Hearing Board process as the key "conduct" that lulled the Plaintiffs into inaction in bringing this suit. *See* D.I. 28 at 20 (citing D.I. 1 at 10–11, ¶¶ 37–41).[30] Even if this Court were to adopt Plaintiffs' dubious posture that Captain Alfree somehow lulled the Plaintiffs into inaction,[31] thereby raising a genuine issue of fact for trial, there is absolutely nothing in the Plaintiffs' pleadings nor the record itself that connects Mr. Alfree's conduct with that of the Defendants named in this lawsuit. Put simply, Plaintiffs can point *to no words or actions by these Defendants* that induced the Plaintiffs to forego bringing suit within the proper time. Absent this nexus, the Plaintiffs cannot rightfully claim that they were lulled into inaction in

bringing suit by the Defendants' affirmative conduct and that therefore, the Defendants are equitably estopped from raising the statute of limitations as a defense.[32]

■ Plaintiffs' "continuing tort" argument fares no better. *See* D.I. 28 at 23–24. This Court has indicated that a continuing tort exists when there is a continuation of unlawful acts not continued consequences from an unlawful act. *Andrews v. New Castle County, et al.*, C.A. No. 84–124–LON, slip op. at 32 (D.Del. Apr. 10, 1992). If any of those acts falls within the statutory period, the plaintiff is permitted to litigate all of the unlawful acts. *Carr v. Town of Dewey Beach*, 730 F.Supp. 591 (D.Del.1990).

In light of the Court's conclusion that the Plaintiffs have not shown the existence of a cognizable claim relating to any action occurring after the alleged incident of excessive force, there are no "continuing un-

**29.** To the extent that the Plaintiffs are making the argument that the statute of limitations was tolled during the Complaint Hearing Board process or that the accrual date for this cause of action occurred sometime after the October 6, 1989 incident occurred, (*i.e.,* after Plaintiffs learned that their claim would not be redressed to their satisfaction by the Internal Affairs grievance procedure), those arguments are rejected. *Accord, Dixon v. City of Wilmington*, C.A. No. 89–598–LON (June 19, 1992) (where this Court expressly held that accrual of a section 1983 claim is not delayed as a result of the actions of grievance committees).

**30.** Captain Alfree was a member of the Wilmington Police Department, Internal Affairs Division, at the time of this incident.

**31.** The Court notes for the record that it finds Plaintiffs' argument that they were "lulled into inaction in bringing suit" insupportable based on the record. Most significantly, Plaintiffs allege that based on their conversations with the Captain, they were led to believe that they would be entitled to hear and refute the testimony of the Officers at the November 9, 1989 hearing (D.I. 1 at 13, ¶ 40) and that the hearing would be a fair and just one (D.I. 1 at 12, ¶ 39). Additionally, Plaintiffs posit that the perceived procedural deficiencies in the grievance procedure somehow contributed to their inaction. D.I. 28 at 20.

The Court finds that none of these facts, even when viewed together, demonstrate *how* Plaintiffs were lulled into not bringing this suit in a timely fashion. At no point do Plaintiffs allege,

nor does the factual record support, a claim that Captain Alfree ever represented to the Plaintiffs that the Internal Affairs proceeding would afford them the opportunity to recover damages, the likes of which they are seeking in this action. Moreover, this "conduct" in no way hindered Plaintiffs' abilities to simply confer with an attorney to determine their rights to bring suit. Lastly, the Court rejects Plaintiffs' conclusory allegation that by his mere status as an officer, Captain Alfree automatically induced Plaintiffs' into inaction, thereby necessitating a finding that the statute of limitations defense has been waived. D.I. 28 at 21 ("As an Officer of the Wilmington Police Department, Captain Alfree induced Eugene Chudzik to rely upon the internal affairs hearing to obtain justice.").

**32.** This conclusion also applies to the Plaintiffs' argument that the Defendants are equitably estopped from raising the statute of limitations as a result of some form of "fraudulent concealment." D.I. 28 at 22–23 (applying some of the factors articulated in *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984). Even if the Court concurs with Plaintiffs' tenuous conclusion that they did not unduly delay by bringing suit in November 1991—approximately *20 months after* they allegedly discovered this "fraudulent concealment" (*i.e.,* March 5, 1989, when Captain Alfree last communicated with the Plaintiffs)—Plaintiffs' claim would still not lie. Put simply, unlike the case in *Bell,* there is nothing in the record or pleadings that suggest that *the Defendants in this action* engaged in any conduct aimed at concealing facts relating to the October 6, 1989, incident.

lawful acts" upon which the Plaintiffs can connect to the claim of excessive force in order to save it from being time-barred.[33] Accordingly, summary judgment is proper.[34]

### 5. *Pendent Jurisdiction Over Plaintiffs' Various State Law Claims Is Denied*

Having dismissed all of Plaintiffs' federal claims, there no longer exists any independent basis for subject matter jurisdiction over the Plaintiffs' remaining state law claims. When the Court dismisses Plaintiffs' federal claims, the decision to retain jurisdiction over the pendent state law claims lies within the discretion of that Court. Accordingly, the Court declines to exercise its jurisdiction over the state law claims and therefore will dismiss the case in its entirety.[35]

### D. CONCLUSION

For the reasons contained herein, the Defendants' Motion for Summary Judgment, D.I. 22, and Motion to Dismiss, D.I. 25, are granted in their entirety as to the federal claims. The Court declines to exercise pendent jurisdiction over Plaintiffs' claims raised under Delaware law and will therefore dismiss the action because there is no longer an independent basis for federal jurisdiction.

---

**33.** The Court expresses no opinion as to whether Plaintiffs' claims regarding the Complaint Board Hearing process would have been satisfactory as "continuing unlawful acts" of the use of unlawful force. *Compare* D.I. 28 at 23–24 with D.I. 34 at 14.

**34.** In light of this ruling, the Court does not reach the argument raised by the Defendants that the Plaintiffs failed to effectuate sufficient service of process as to all the Defendants in both their individual and official capacities. D.I. 22 at 8–14.

**35.** In lieu of this ruling, the Court expresses no opinion as to Defendants' argument that Plaintiffs failed to comply with the requisite notice requirements for the bringing of its state law negligence claims. D.I. 22 at 34–35 (Argument X).