John T. GILL, et al., Plaintiffs,

v.

The CELOTEX
CORPORATION, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted: April 4, 1989.
Decided: Aug. 16, 1989.

Douglas B. Canfield, of Jacobs & Crumplar, P.A., Wilmington, for plaintiffs.

Robert B. Anderson, of McCarter & English, Wilmington, for defendant.

TAYLOR, Judge.

Defendant Celotex Corporation [Celotex] has moved for partial summary judgment with respect to the claim of Patricia A. Gill [Mrs. Gill], widow of John T. Gill, for loss of consortium resulting from the asbestos-related disease which her husband, John T. Gill, allegedly suffered from, and her claim for mental anguish resulting from the death of Mr. Gill as a result of the alleged asbestos-related disease.

## I.

With respect to the loss of consortium claim, Celotex points out that Mr. and Mrs. Gill were married in September of 1986. Mr. Gill brought this suit in March, 1985 based upon a diagnosis in 1983 that he was suffering from asbestosis.

Celotex cites 2 Minzer, et al., *Damages in Tort Actions*, § 11.16 (1986), and Prosser, *The Law of Torts*, §§ 125 and 932 (5th ed. 1984) for the proposition that a cause of action for loss of consortium exists only where the marital relationship existed at the time of the injury. It also cites *Jones v. Elliott*, Del.Supr., 551 A.2d 62 (1988); and *Gillespie–Linton v. Miles*, Md.Sp.Ct. App., 473 A.2d 947 (1984) for the same proposition.

Mrs. Gill contends that the principle which Celotex's authorities stand for is not applicable to a disease which becomes progressively worse after the marriage occurs. In support of this contention, she relies on language of *Jones*, "that, as a result of the physical injury, the other spouse was deprived of some benefit which formerly existed in the marriage...." *Jones*, 551 A.2d at 64. She attempts to distinguish an asbestos-related disease, which develops and progresses over a period of years from an injury which might be incurred in an automobile accident which is a single impact injury. Thus, she contends that if a non-injured spouse is to be barred from a consortium claim, the bar should be limited to the injured spouse's disability at the time of marriage and the non-injured spouse should be entitled to recover for any worsening of the injured spouse's condition which occurs after the marriage.

This Court and the Delaware Supreme Court have treated asbestos-related diseases as an "injury sustained" as that phrase is used in the applicable statute of limitations, 10 *Del.C.* § 8119. *Sheppard v. A.C. & S. Co., Inc.*, Del.Super., 498 A.2d 1126 (1985), *aff'd. Keene Corporation v.*

*Sheppard,* Del.Supr., 503 A.2d 192 (1986). Further, because of the fact that those diseases often do not become manifest for a period of years after exposure to asbestos, the injury is held to be inherently unknowable until the disease becomes known to the claimant. *Stagg v. Bendix Corp.,* Del.Super., 472 A.2d 40 (1984), *aff'd.,* Del. Supr., 486 A.2d 1150 (1984).

This Court and the Delaware Supreme Court have held that exposure to asbestos can result in a number of different and distinct diseases. *Sheppard v. A.C. & S. Co., Inc., supra.* For purposes of this decision, it is assumed that the asbestosis which Mr. Gill alleged in his 1985 complaint is the only disease from which he suffered up to the time of his death. Therefore, he did not contract a disease after his marriage to Mrs. Gill.

█ The elemental consideration in determining loss of consortium in the usual situation where the marital relationship existed both before and after the injury is the comparison of the marital relationship before the injury with that relationship after the injury where the only cause of the change is attributable to the injury. Where the marriage did not occur until after the injury, only the post-injury relationship is considered. Since the search is to determine the deterioration to the relationship resulting from changes occurring after the relationship began, two alternate considerations could be applied. One is the actual physical manifestation of the spouse's disease as of the marriage. The other is the foreseeable consequences of the spouse's pre-marital disease which would be likely to develop after the marriage.

█ In general, a right of action resulting from tortious conduct encompasses all of the reasonably foreseeable consequences of the tort. *Restatement (Second) of Torts* § 910 (1979). Under that principle, the tortfeasor is liable for the foreseeable deterioration of health which follows from the tortious disease. By the same reasoning, when the non-injured spouse enters into the marital relationship with the injured spouse after discovery of the disease, the non-injured spouse assumes the consequences of the disease including the foreseeable deterioration resulting from that disease. The non-injured spouse does not, of course, assume consequences of any other disease which might also be attributable to asbestos but which had not then become manifest. *Cf. Sheppard v. A.C. & S. Co., Inc., supra.* Nor does it prevent or limit a death claim by the non-injured spouse. 10 *Del.C.* § 3724.

█ Liability based on tort stems from tortious conduct resulting in injury. The determinant may be based on conditions at the time of the injury or at the time of manifestation of injury. In this case, both the tortious conduct and the injury occurred before the marriage. Only the extension of the injury occurred after the marriage. If the extension was a foreseeable consequence of the same injury, it is not a new injury. Hence, it is not consortium which has been lost as a result of an injury occurring after the marriage.

Based on the foregoing considerations, Mrs. Gill is not entitled to recover for deterioration of Mr. Gill's health resulting from asbestosis, and partial summary judgment is GRANTED in favor of Celotex on that issue.

## II.

Celotex also contends that Mrs. Gill is not entitled to recover for mental anguish resulting from the death of Mr. Gill. Celotex relies on 10 *Del.C.* § 3724(d)(5), which is a part of a revised Wrongful Death Act which became effective December 1, 1982. 63 *Del.Laws* 256 (1982).

Section 3724(a) provides:

(a) An action under this subchapter shall be for the benefit of the wife, husband, parent and child of the deceased person.

Section 3724(d) enumerates various elements which may be considered in determining the amount of damages. Item (5) of Section 3724(d) delineates the element of mental anguish as follows:

(5) Mental anguish resulting from such death to the surviving spouse and next of kin of such deceased person. However,

when mental anguish is claimed as a measure of damages under this subchapter, such mental anguish will be applicable only to the surviving spouse, children, father and mother, (if there is no surviving spouse or children) or person standing in loco parentis to the deceased and persons to whom the deceased stood in loco parentis at the time of the injury which caused the death of the deceased.

Celotex extracts from that language the words "at the time of the injury which caused the death of the deceased", and argues that that language bars Mrs. Gill from being awarded damages for her mental anguish because she was not married to Mr. Gill when his injury occurred.

A close examination of the wording of element (5) show that Celotex has misapplied the phrase which it relies on. That phrase appears in the second sentence of element (5).

The first sentence of element (5) provides that mental anguish damage may be awarded only to the surviving spouse, and the next of kin. The second sentence specifies two categories of persons who may be awarded damages for mental anguish. The first category consists of "the surviving spouse, children, father and mother". The second category consists of "Person standing in loco parentis to the deceased and persons to whom the deceased stood in loco parentis at the time of the injury which caused the death of the deceased." The two categories are separated by a comma.

The phrase which Celotex relies on appears in the portion of the second sentence which refers to a person "in loco parentis". That phrase refers to a "person who puts himself in the situation of a lawful parent by assuming obligations incident to the parental relation · without going through the formalities necessary to a legal adoption." 59 Am.Jur.2d, *Parent and Child* § 75 (1987); *see also Commonwealth v. Smith*, 429 Pa. 561, 241 A.2d 531 (1968). For purposes of this decision a person who has assumed a "in loco parentis" relationship will be referred to as the "protector" and the person receiving the protection will be referred to as the "protected person".

The portion of the sentence in § 3724(d)(5) which relates to persons in a "in loco parentis" relationship deals with two separate situations. The language "person standing in loco parentis to the deceased" relates to the case where the protected one has died and the protector survives and the protector is accorded damages for mental anguish for the death of the protected one. The language "persons to whom the deceased stood in loco parentis" relates to the case where the protector died and the protected one survives and the protected one is accorded damages for mental anguish for the death of the protector. The phrase which Celotex's argument rests on, which reads "at the time of the injury which caused the death of the deceased" immediately follows the language relating to the death of a protector. It is clear that the phrase which Celotex relies on was used to apply to an artificial relationship and not to a blood relationship. The insertion of a time requirement is consistent with a relationship which is created by the conduct of the parties and therefore could commence and end at any time dependent upon the needs and wishes of the parties. It is less consistent with a blood relationship, which commences with birth and ends with death. To give this language the application which Celotex suggests would even exclude recovery of mental anguish damages for after-born children, even though the parent might live for years before dying from the asbestos disease.

From the foregoing analysis, I conclude that the language which limits recovery for mental anguish damages to those who had status at the time the deceased was injured does not apply to the surviving spouse.

### III.

In summary, Celotex's motion for summary judgment to bar Mrs. Gill's claim for

loss of consortium is GRANTED. Celotex's motion for summary judgment to bar Mrs. Gill's claim under the Wrongful Death Statute for mental anguish resulting from the death of Mr. Gill is DENIED.