# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOHN R. GILBERT, JR., LEONA CRAVENS, and WOODROW GILBERT, by and through his Guardian Ad Litem, Leona Cravens,

Plaintiffs,

v.

RAMON E. SANTIAGO, PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION, a Wisconsin corporation, NGM INSURANCE COMPANY, a Florida Corporation, FOREMOST INSURANCE COMPANY, a Michigan corporation, and NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, an Ohio corporation,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. K23C-08-004 RLG

Submitted: May 23, 2025
Decided: August 22, 2025

## MEMORANDUM OPINION AND ORDER

*Upon Defendants' Motions for Summary Judgment*
**GRANTED in part, DENIED in part**

David A. Boswell, Esquire, Hudson, Jones, Jaywork & Fisher, LLC, Lewes, Delaware. *Attorney for Plaintiffs Leona Cravens and Woodrow Gilbert.*

Kevin Howard, Esquire, Hopkins & Windett, LLC, Dover, Delaware. *Attorney for Plaintiff John R. Gilbert, Jr.*

Shae Chasanov, Esquire, Tybout, Redfearn & Pell, Wilmington, Delaware. *Attorney for Defendant Peak Property and Casualty Insurance Corporation.*

Daniel P. Bennett, Esquire, Mintzer Sarowitz, Zeris Ledva & Meyers, LLP, Wilmington, Delaware. *Attorney for Defendant NGM Insurance Company.*

Sarah B. Cole, Esquire, Marshall Dennehey, P.C., Wilmington, Delaware. *Attorney for Defendant Foremost Insurance Company.*

Paul D. Sunshine, Esquire, Reger Rizzo & Darnall LLP, Wilmington, Delaware. *Attorney for Nationwide Property and Casualty Insurance Company.*

**GREEN-STREETT, J.**

2

## I.    Introduction

The brother and sister of a man killed in a vehicular accident seek compensation for wrongful death under the provisions of 10 Del. C. § 3724.  The insurance companies involved in defending that litigation filed motions for summary judgment, contending the brother and sister do not qualify for any avenue of recovery under that statute.  As the brother and sister's claim for loss of pecuniary benefit is permitted by statute, Defendants' Motions for Summary Judgment are **DENIED in part**.  The sister's other claims, however, are unsupported by the record and Defendants' Motion as to those claims is **GRANTED**.  Similarly, as the decedent left behind a living son and did not stand in *loco parentis* to his brother, the insurance companies' Motion for Summary Judgment as to the brother's other claims is **GRANTED in part**.

## II.    Factual and Procedural Background

On August 6, 2021, Ramon Santiago's vehicle collided with John R. Gilbert's ("John")[1] motorcycle.[2]  The collision threw John from his motorcycle, causing him to sustain "multiple blunt-force traumas" resulting in his death.[3]  John's son, two

---

[1] The Court refers to the members of the Gilbert family by their first name, as is done in the Complaint, for clarity.  The Court intends no familiarity or disrespect.

[2] Compl. at 5.

[3] Id. at 7.

sisters,[4] and brother filed a complaint against Mr. Santiago and four insurance companies.[5]  On October 27, 2023, the Court granted Plaintiffs' Motion for Default Judgment against Mr. Santiago.[6]

One of John's sisters, Leona Cravens, filed a motion to be appointed guardian *ad litem* for John's brother, Woodrow "Buddy" Gilbert ("Buddy").[7]  That motion outlined, "Buddy has suffered from disabilities for his entire lifetime, which are best described in summary fashion as significant cognitive disabilities[,] which, inter alia, limit his decision-making capabilities."[8]  The Court granted Ms. Cravens's motion, appointing her guardian *ad litem* for Buddy.[9]

On September 11, 2024, Defendant NGM Insurance filed a Motion for Summary Judgment as to all claims brought by Ms. Cravens,[10] as well as a Motion for Summary Judgment as to all claims brought by Buddy.[11]  By way of letter, the

---

[4] One of John's surviving sisters, Eleanor Turner, stipulated to a dismissal of all of her claims against Defendants, with prejudice.  See D.I. 49 (Aug. 9, 2024) (The Court's Order regarding the stipulated dismissal).

[5] Compl. at 1.

[6] D.I. 33 (Oct. 27, 2023).

[7] Mot. for Appointment of Guardian *Ad Litem* for Disabled Plaintiff, D.I. 42 (July 8, 2024).

[8] Id. at 2.

[9] D.I. 45 (July 8, 2024).

[10] D.I. 53 (Sept. 11, 2024).

[11] D.I. 52 (Sept. 11, 2024).

other insurance companies involved in the litigation – Foremost;[12] Peak Property;[13] and Nationwide[14] – joined NGM's motions and expressed they would not contribute additional filings. Ms. Cravens filed her Response,[15] and a Response on Buddy's behalf,[16] on January 13, 2025. On behalf of all insurance company defendants, Nationwide filed a Reply to Ms. Cravens's Response on February 10, 2025.[17] Also on February 10th, NGM Insurance filed a Reply to Buddy's Response on behalf of all insurance company defendants.[18] The Court held oral argument on both motions on May 23, 2025.[19]

## III. Standard of Review

Under Superior Court Civil Rule 56(c), this Court may grant a motion for summary judgment when "there is no genuine issue of material fact[,] and [ ] the moving party is entitled to a judgment as a matter of law." The moving party bears

---

[12] D.I. 57 (Nov. 8, 2024).

[13] D.I. 59 (Dec. 4, 2024).

[14] D.I. 63 (Dec. 20, 2024).

[15] D.I. 66 (Jan. 13, 2025).

[16] D.I. 65 (Jan. 13, 2025).

[17] D.I. 68 (Feb. 10, 2025).

[18] D.I. 69 (Feb. 10, 2025).

[19] D.I. 71 (May 23, 2025).

the burden of showing no genuine issues of material fact remain in dispute.[20]  If the moving party meets that burden, the non-moving party must demonstrate material issues of fact remain.[21]  The Court evaluates the record in a light most favorable to the non-moving party.[22]  "When the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law."[23]

## IV.    Analysis

Ms. Cravens and Buddy assert multiple bases for monetary awards under 10 Del. C. § 3724(d), which permits the siblings of a decedent to recover for:

> (1) deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries that would have resulted from the continued life of the deceased; (2) loss of contributions of support; [and] (3) loss of parental, marital[,] and household services, including the reasonable cost of providing for the care of minor children.

Ms. Cravens seeks compensation for (1) the value of services John performed on a rental property shared by John and Ms. Cravens; (2) half the cost of a family crypt Ms. Cravens purchased that she contends John agreed to contribute to before his

---

[20] Moore v. Sizemore, 405 A.2d 679, 680 (Del. 1979) (citing Ebersole v. Lowengrub, 180 A.2d 467 (1962)).

[21] Id.

[22] Id. at 679.

[23] Connolly v. Theta Chi Fraternity, Inc., 2018 WL 1137587, at *3 (Del. Super. Feb. 28, 2018), aff'd sub nom. Connolly v. Alpha Epsilon Phi Sorority, 198 A.3d 179 (Del. 2018).

death; and (3) the additional costs borne by Ms. Cravens in assisting her brother, Buddy.[24] Defendants argue those potential damages are outside the scope of 10 Del. C. § 3724(d), and, thus, unrecoverable.[25]

Buddy delineates two paths to recovery under § 3724: (1) that John stood in *loco parentis* to him, entitling him to recover for mental anguish under § 3724(d)(5); and (2) that John's death deprived him of "extensive household services" and "the promised entire renovation of improvements on his property."[26] Defendants contend no factual basis exists to suggest John stood in *loco parentis* to Buddy.[27] Defendants further argue Buddy does not qualify for recovery under any of the remaining enumerated grounds for recovery under § 3724(d).[28] Buddy counters that both claims contain factual issues, and thus should be left for a jury to decide.[29] Buddy also seeks recovery under 10 Del. C. § 3724(d)(1).[30]

---

[24] Compl. at 18-21.

[25] Mot. for Summ. J. as to Ms. Cravens's Claims at 4-6, D.I. 53 (hereinafter "Mot. for Summ. J. – Ms. Cravens at __").

[26] Compl. at 17-18.

[27] Mot. for Summ. J. as to Buddy's Claims at 4, D.I. 52 (hereinafter "Mot. for Summ. J. – Buddy at __").

[28] Id. at 6.

[29] Buddy's Resp. at 7-8, D.I. 65.

[30] Id. at 7.

**A.** **Both Buddy and Ms. Cravens's claims under 10 <u>Del</u>. <u>C</u>. § 3724(d)(1) for the loss of John's future contributions to his estate may proceed**

10 <u>Del</u>. <u>C</u>. § 3724(d)(1) allows a decedent's beneficiaries, including his siblings, to recover for the loss of "the financial assets, if any, which may have accumulated and increased in [the decedent's] estate if he had lived for a longer period of time."[31]  The Complaint asserts claims under this provision for all named Plaintiffs.[32]  None of the parties have presented the Court with any evidence concerning John's estate or any document governing its administration.  The plain language of 10 <u>Del</u>. <u>C</u>. § 3724(d)(1) allows for both Ms. Cravens and Buddy to pursue compensation as John's siblings with a potential interest in benefiting from the growth of John's estate.  That pursuit may ultimately prove futile if any future contributions to John's estate would have gone to another party – for example, his living child – but at this stage, those claims may proceed.

Defendants contend "Buddy was not receiving any pecuniary benefits from the decedent, and therefore, would not have the expectation of any in the future."[33]  That contention fundamentally misunderstands the purpose of recovery under § 3274(d)(1), conflating it with the "contributions for support" outlined by §

---

[31] <u>Fall v. Evans</u>, 1989 WL 31558, at *4 (Del. Super. Mar. 28, 1989), <u>aff'd</u>, 577 A.2d 752 (Del. 1990).

[32] Compl. at 12.

[33] Mot. for Summ. J. – Buddy at 6.

3724(d)(2). Defendants note that Buddy has not provided any evidentiary basis to suggest John supported him financially. That lack of evidence, however, has no bearing on Buddy's claim under § 3724(d)(1). A reasonable jury may determine, based on the current position of the record, that Buddy – and Ms. Cravens – stood to benefit from any increase in the value of John's estate as a potential beneficiary of that estate.

10 Del. C. § 3724(d)(1) permits recovery for the value that John would have added to his own estate had he lived, to then pass on to his beneficiaries. At times, the parties' filings appear to misconstrue this provision as a "catch-all" provision. As discussed below, claims that attempt to use 10 Del. C. § 3724(d)(1) to recover something beyond potential future contributions to John's estate cannot proceed. Any further litigation surrounding Plaintiffs' claims brought under 10 Del. C. § 3724(d)(1) must focus on (1) the future contributions John may have made to his estate; and (2) how that estate would be divided.

**B.    John did not stand in *loco parentis* to Buddy**

John left behind a surviving child. Accordingly, for Buddy to have standing to bring a claim under § 3724(d)(5) for mental anguish, he must show John stood in *loco parentis* to him. Whether a claimant has standing to bring a claim under § 3724(d)(5) necessarily involves an analysis of the factual record. That analysis does not preclude the Court from determining that standing as a matter of law and

9

resolving the issue through summary judgment, provided no genuine dispute of facts material to that finding remain.[34]

The facts surrounding John and Buddy's relationship are undisputed. Buddy experiences some "intellectual disabilities"[35] that prevent him from being able to read, write, or perform basic math.[36] The two went "crabbing, fishing, trapping, [ ] hunting for deer and for rabbit, and on a motorcycle ride."[37] John furnished Buddy employment, and assisted Buddy with repairs around his house.[38] Sometime shortly before their mother's death, John agreed to "take care" of Buddy.[39]

Since reaching adulthood, Buddy has never had a legal guardian.[40] As Buddy no longer possesses a valid license, he requires assistance with transportation to and from various destinations.[41] One of Buddy's friends, Mary Hurd, transports him to

---

[34] See Trievel v. Sabo,1996 WL 944981, at *5 (Del. Super. Mar. 13, 1996) (granting summary judgement after finding the claimant did not stand in *loco parentis* for the decedent); see also Chapman v. Brentlinger Enterprises, 124 F.4th 382, 401 (6th Cir. 2024) (remanding a case to the district court to make a finding on whether claimant stood in *loco parentis*).

[35] Buddy's Resp. at 6.

[36] Id. at 2.

[37] Id.

[38] Id. at 4-5.

[39] Id. at 2.

[40] Id.

[41] Id. at 3-4.

10

doctors' appointments, ensures he reaches the grocery store for shopping, and manages his checkbook.[42] Before Ms. Hurd maintained Buddy's checkbook, his sister Eleanor Turner helped him manage his finances.[43] Buddy married twice, and has an adult son.[44] Buddy lives alone, cooks for himself, and does basic chores around his home.[45]

"In *loco parentis* relationships cannot reasonably be limited to minors."[46] In an in *loco parentis* relationship between adults, one adult steps into a parental role "without going through the formalities necessary to a legal adoption."[47] A *loco parentis* relationship exists when one adult assumes "obligations incident to the parental relationship,"[48] "with the intention of serving as a parent."[49] "The *loco parentis* relationship is such that it must reside in the minds and hearts of the parties

---

[42] Id. at 3.

[43] Id.

[44] Id.

[45] Mot. for Summ. J. – Buddy at 4.

[46] See Chapman, 124 F.4th at 395 (internal quotations omitted) (quoting Thomas v United States, 189 F.2d 494, 504 (6th Cir. 1951)).

[47] See Trievel, 1996 WL 944981, at *6 (Mar. 13, 1996) (internal quotations omitted) (quoting Gill v. Celotex Corp., 565 A.2d 21, 24 (Del. Super. 1989)).

[48] Id. (citing Gill, 565 A.2d at 24).

[49] Chapman, 124 F.4th at 395 (internal quotations omitted) (quoting Thomas, 189 F.2d at 504).

involved."[50] Indicia of such a relationship may include the assumption of day-to-day responsibilities; financial support; expressed intention of the parties; physical proximity; and whether the *loco parentis* parent "exercises control or has rights over" the other adult.[51]

John never took any formal control over Buddy or Buddy's finances. No evidence in the record suggests either man considered their relationship to be that of a parent and child rather than fraternal. The only statement made by John that suggests some assumption of heightened responsibility for Buddy stems from John's bedside promise to their dying mother that he would take care of Buddy after she died. That type of statement would not be uncommon for one sibling to make about another to a dying parent, and does not create a presumption that John intended to assume a parental role over Buddy.

John's relationship with Buddy included spending considerable time together; helping Buddy with some tasks for which he needed assistance; and providing work for Buddy when they were younger. Although Buddy did not manage his own finances, John did not step into that role for him. Instead, one of Buddy's sisters, and later Buddy's friend, Ms. Hurd, managed Buddy's finances. Buddy testified that

---

[50] See id. (internal quotations omitted) (quoting Banks v. United States, 267 F.2d 535, 538 (2d Cir. 1959)).

[51] Id.

he received a lot of help from all his siblings, not only John.[52] John did not financially support Buddy. John offered to let Buddy live with him, so he could make some repairs to Buddy's house, but Buddy refused that offer because he wanted to stay closer to his doctors.[53] Buddy worried that, if he moved in with John, Ms. Hurd would no longer be able to take him to doctor's appointments.[54]

Undoubtedly, John and Buddy maintained a close relationship. Showing the relationship rises to the level of in *loco parentis*, however, requires more than just intimacy. Buddy's argument relies on John's promise to their mother, combined with Buddy's ongoing disability.[55] The record reflects, however, that John never assumed control of Buddy's day-to-day affairs or finances. Buddy's limitations, however restrictive, do not prevent him from living alone. No evidence indicates John assumed any role beyond that of dutiful brother. Absent an in *loco parentis* relationship, Buddy's claim under § 3724(d)(5) must be dismissed.

---

[52] Pl.'s Ex. B at 30 (Q: "After your mom passed away, how much did your sisters help you as opposed to how much John helped you?" A: "They'd come help me out a lot.").

[53] Id. at 52.

[54] Id.

[55] Buddy's Resp. at 7.

**C. Buddy's claim under § 3724(d)(3) may be presented to a jury, but his claim under § 3724(d)(2) does not survive summary judgment**

Defendants correctly assert Buddy has not demonstrated John financially supported him. Certainly, John bought gifts for Buddy. Buddy testified, however, that he did not rely on, or receive, regular financial support from John. Even viewing the facts in Buddy's favor, he has not substantiated a claim for loss of financial support stemming from John's death. Defendants' Motion for Summary Judgment is granted as to Buddy's claim under § 3724(d)(2).

§ 3724(d)(3) permits recovery for the loss of household services. Defendants argue this avenue for recovery stems from "assuming the parental and household services for the caring of minor children."[56] That argument ignores the text of § 3724(d)(3), which includes "the reasonable cost of providing for the care of minor children," but does not exclude other household services. Defendants provide no decisional law interpreting § 3724(d)(3) to prevent recovery of other "household services" that fall outside the bounds of parental or marital services. Such an exclusion would run contrary to the plain text of the statute, which includes undefined "household services" as grounds for recovery.

Evaluating the record in a light most favorable to Buddy, he has shown that John performed maintenance on Buddy's house. Whether those services rise to the

---

[56] Id.

level of compensable "household services" remains a question for the jury. Buddy's claim under § 3724(d)(3) thus survives summary judgment.

**D.    Deprivation of the expectation of pecuniary benefits, as contemplated by 10 <u>Del</u>. <u>C</u>. § 3724(d)(1), does not apply to Ms. Cravens's purchase of a family crypt**

As John's sister, Ms. Cravens qualifies as a potential beneficiary who may pursue compensation under 10 <u>Del</u>. <u>C</u>. § 3724(d)(1). Ms. Cravens's costs associated with an alleged promise made by John, however, do not fall within that scope and are not a factor in the calculation of any recovery under that subsection. Regardless of whether John agreed to assist Ms. Cravens financially with the purchase of a family crypt, and whether such an agreement remained enforceable after John's death, 10 <u>Del</u>. <u>C</u>. § 3724(d)(1) does not permit recovery for an unfulfilled promise – even if the decedent's failure to perform directly stems from his death. Should Ms. Cravens seek to enforce the value of that alleged promise, she must pursue that recovery via a different avenue than an action brought under 10 <u>Del</u>. <u>C</u>. § 3724(d).

**E.    Ms. Cravens cannot recover for the loss of John's services to their shared rental property**

When John died, Ms. Cravens assumed full ownership of the property she previously co-owned with John.[57] Along with inheriting John's half of the property, she became solely responsible for the upkeep of the property. Ms. Cravens now

---

[57] Mot. for Summ. J. – Ms. Cravens at 6.

seeks compensation for having to pay someone to complete tasks previously performed by John for the upkeep of the property, irrespective of her increased ownership stake in the property. Even if 10 Del. C. § 3724(d) permitted this type of recovery, Ms. Craven's argument does not account for the pecuniary gain associated with inheriting half of the property offsetting any increased maintenance costs she may incur. On balance, Ms. Cravens has not suffered a pecuniary loss by assuming total ownership of a property of which she formerly owned half. Although her position that John contributed a great deal to the upkeep of their shared property free of charge because of his passion for working on his airplane may evoke sympathy, it does not provide a legal pathway to recovery.

10 Del. C. § 3724(d)(3) permits recovery for the loss of household services. Ms. Cravens's argument appears to conflate household services rendered where the beneficiary lives with services performed on property owned as a business venture.[58] Services performed for the benefit of a business venture do not transform into "household services" simply because the business venture in question contains a house. Ms. Cravens makes no argument that John contributed in any meaningful

---

[58] See Ms. Cravens's Resp. at 8 (in response to Defendants' contention that Ms. Cravens is attempting to profit by seeking reimbursement for maintenance costs that John would have performed on the rental property – which she became the sole owner of upon John's death – Ms. Cravens argued: "By that standard, when a husband and wife own valuable real estate as tenants by the entireties, upon her husband's death, should she refrain from seeking his lost wages and household services, when she now owns the home(s) entirely, and should she be portrayed by the insurer as a profiteer, gaining a windfall rather than suffering a loss? For shame.").

way to the upkeep of *her* household, only that he performed maintenance on a property the two co-owned. As recovery for that type of service goes beyond what 10 Del. C. § 3724(d)(3) contemplates, that claim does not survive summary judgment.

> **F.** **Ms. Cravens cannot recover damages for any increased financial burden placed on her in caring for her brother, Buddy**

Ms. Cravens does not suggest John financially supported her in any way. She does note, however, that John's death has imposed a financial hardship on her by virtue of forcing her to help support her disabled brother, Buddy.[59] Ms. Cravens alleges that:

> Because decedent is no longer present to care for Buddy's needs, and because those needs still must be met, Leona and Eleanor now must meet or arrange for Buddy's needs to be met; the loss of services to Buddy have imposed additional duties upon the other surviving siblings, in terms of time and money.[60]

To the extent that John provided financial support to Buddy, Buddy's claim for a loss of contribution for support would not flow through to Ms. Cravens, even assuming she stepped into John's role in providing financial support to Buddy.[61] 10 Del. C. § 3724(d)(2) permits recovery for loss of financial support that the decedent

---

[59] Compl. at 21.

[60] Id.

[61] As noted, *supra*, the Court finds Buddy's claim under 10 Del. C. § 3724(d)(2) must be dismissed.

17

provided the claimant. It does not contain any language permitting recovery based on an increased financial burden that Ms. Cravens willingly assumed to help provide for Buddy. As Ms. Cravens has not advanced any evidence that John provided financial support *to Ms. Cravens*, she cannot proceed with a claim under 10 <u>Del</u>. <u>C</u>. § 3724(d)(2).

## V.     <u>Conclusion</u>

John did not stand in *loco parentis* to Buddy. Accordingly, Defendants' motion as to Buddy's claim under § 3724(d)(5) is **GRANTED**. Buddy has failed to provide any evidence that John supported him financially. Genuine issues of fact remain, however, regarding Buddy's entitlement to compensation for loss of pecuniary benefit and household services. Therefore, Defendants' motion is **GRANTED** as to Buddy's claim under § 3724(d)(2), and **DENIED** as to Buddy's claims under § 3724(d)(1) and (3).

Ms. Cravens's claims for recovery under 10 <u>Del</u>. <u>C</u>. § 3724(d)(2) and (3) are beyond the scope of the recovery permitted by statute, and therefore do not survive summary judgment. Defendants' Motion for Summary Judgment is **GRANTED** as to those claims. Ms. Cravens may seek recovery for the loss of pecuniary benefits caused by John's death. The determination of that amount, however, will focus on the potential gains to John's estate had John survived, and the proportional

18

distribution of those gains among John's beneficiaries. It will not include an analysis of the alleged promise regarding contributing to the purchase of a family crypt.

Thus, Defendants' Motion for Summary Judgment as to Ms. Cravens is **GRANTED in part** and **DENIED in part**. Defendants' Motion for Summary Judgment as to Buddy is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge